Slip-Op. 01-33

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: CHIEF JUDGE GREGORY W. CARMAN

| | |
|---|---|
| _____ | |
| **Washington International Insurance Co.,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **United States,** : | |
| : | |
| **Defendant.** : | |
| _____: | **Consolidated Court No.: 92-11-00720** |
| : | |
| **United States,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **Washington International Insurance Co.,** : | |
| : | |
| **Defendant.** : | |
| _____: | |

[The United States' motion to dismiss CIT No. 92-11-00720 is granted in part and denied in part. Washington International Insurance Company's motion for summary judgment in CIT No. 92-11-00720 is denied. The United States' cross-motion for summary judgment in CIT No. 92-11-00720 is denied. Washington International Insurance Company's motion to for summary judgment in CIT No. 96-10-02466 is denied. The United States' motion for summary judgment in CIT No. 96-10-02466 is granted. Pursuant to CIT R. 54(b) final judgment is entered in favor of the United States on its complaint in CIT No. 96-10-02466]

*Sandler, Travis & Rosenberg* (Kenneth Wolf), New York, NY, for Plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General of the United States; *Joseph I. Liebman*, Attorney-in-Charge, International Trade Field Office, *Mikki Graves Walser*, Commercial Litigation Branch, Civil Division, United States Department of Justice, for Defendant.

Dated: March 28, 2001

OPINION

**CARMAN, Chief Judge:** The consolidated action before this Court consists of two cases,

*Washington International Insurance Co. v. United States*, CIT No. 92-11-00720, and *United*

*States v. Washington International Insurance Co.*, CIT No. 96-10-02466.  At issue are forty-one

bonded entries of antifriction bearings that were imported by General Bearing Corporation

(General Bearing/Principal)[1] into the United States between November 1988 and April 1990

subject to the terms of a 1988 antidumping duty order.  Eleven of the forty-one entries are the

subject of Washington International Insurance Company's (Washington International) complaint

in CIT No. 92-11-00720.[2]  The remaining thirty entries are the subject of litigation in the United

States' suit, CIT No. 96-10-02466.  For ease of reference, the entries cited in CIT No. 92-11-

00720 are referred to as the "Group I"[3] entries and the entries cited in CIT No. 96-10-02466 are

referred to as the "Group II"[4] entries.

The events leading to and the legal claims underlying this consolidated action are

unquestionably convoluted.  Familiarity with the factual background is necessary to understand

the parties' allegations.  Accordingly, the following section provides a detailed discussion of

---

[1] General Bearing Corporation is a domestic importer of various bearings.  Washington International, the plaintiff and defendant in this consolidated action, was engaged by General Bearing to act as a surety for its imports of the merchandise at issue in this case.

[2] Washington International originally cited thirteen entries in its complaint.  Subsequently, however, Washington International abandoned its claim on Entry No. C150-008351-9.  Additionally, Washington International admits that the Entry No. C15-0008332-9 was not reliquidated and all duties demanded on this entry were not paid at the time CIT No. 92-11-00720 was filed.  Apparently, interest in the amount of $698.58 remains due on this entry.  Because all duties on this entry were not paid at the time CIT No. 92-11-00720 was filed, Washington International failed to satisfy the jurisdictional requirements of 28 U.S.C. § 2637(a) which provides: "A civil action contesting denial of a protest under section 515 of the Tariff Act of 1930 may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced…."
This entry is, therefore, not properly before the Court and will not be considered as part of the Group I entries.

[3] The Group I entries are: C150009794-9; C150008303-0; C150008312-1; C150008318-8; C150008321-2; C150008342-8; C150008357-6; C150008363-4; C150008362-6; C150008375-8; C150008380-8.

[4] The Group II entries are as follows: 419-01557482; 419-01569289; 419-01570352; 419-01597181; 419-01594873; 419-0159445-0; C15-00083352; C15-00097915; C15-00097956; C15-00097857; C15-00083550; C15-00083253; C15-00083477; C15-00083527; C15-00097899; C15-00083568; C15-00083600; C15-00083279; C15-00083220;

events that precipitated this case. To provide clarity, the facts are divided into three sections, each corresponding to a specific series of events. The facts are undisputed, have been stipulated to by the parties, and are applicable to each of the motions discussed below.[5]


## BACKGROUND

**A.      The Antidumping Determination, Entry, and Liquidation of the Merchandise at Issue**

On November 9, 1988, the United States Department of Commerce (Commerce) published a preliminary determination that antifriction bearings from Japan were being sold at less than fair value. *See Preliminary Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from Japan*, 53 Fed. Reg. 45343 (Nov. 9, 1988) (*Preliminary Determination*). Based on its initial investigation, Commerce established an estimated antidumping duty rate of 44.76 percent. *See id.* at 45,352. Commerce then directed the United States Customs Service (Customs) to suspend liquidation of all subject merchandise and to require importers to post either cash deposits or bonds securing the estimated antidumping duties. *See id.* at 45351.

General Bearing imported merchandise from Japan subject to the antidumping duty order. In the normal course of business, General Bearing imported entries that were secured by cash deposits and others that were secured by surety bond. Between November 1988 and April 1990, General Bearing imported forty-one bonded entries that are the subject of this consolidated

---

C15-00083147; C15-00083261; C15-00083766; C15-00083139; C15-00083071; C15-00097824; C15-00097808; C15-00083725; 419-15913333; C15-00083329; C15-00083832.

[5] Based upon the papers submitted to the Court, a factual timeline was constructed for review by the parties. After review, the parties made suggested revisions and stipulated in writing to the resulting timeline. *See* Letter from Kenneth W. Wolf to Chief Judge Gregory W. Carman, October 5, 2000.

action.[6]  As to these forty-one entries, Washington International served as surety and posted the requisite bonds.

On May 15, 1989, Commerce published notice of an antidumping duty order finalizing its determination that antifriction bearings from Japan were being sold at less than fair value and were materially injuring the United States industry.  *See Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan,* 54 Fed. Reg. 20904 (May 15, 1989) (*Final Determination*).  In June 1990, Commerce initiated the First Annual Administrative Review covering subject merchandise entered between November 9, 1988 and April 30, 1990.  Commerce determined that merchandise produced by companies that participated in the first administrative review would be liquidated at a company specific rate.  *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Therefrom From Japan; Final Results of Antidumping Duty Administrative Reviews*, 56 Fed. Reg. 31754, 31756 (July 11, 1991) (*Administrative Review Results*).  The importers would bear the burden of providing documentary evidence establishing that individual manufacturers had participated in the administrative review.  *See id.*  Merchandise manufactured by companies not participating in the first administrative review would be liquidated at the "all others" rate applicable at the time the merchandise was entered.  *See id.*

The Group I entries and three of the Group II entries were liquidated between October 1991 and December 1991.  The remaining Group II entries were liquidated on July 16, 1993.[7]  At the time the Group I entries were liquidated, Customs was under the impression that General Bearing's entries were manufactured by companies that had not participated in the first administrative review.  Accordingly, these entries were liquidated at the "all others" rate of 44.76

---

[6] The entries secured by cash deposit are not before this Court.
[7] To date, the duties on these entries have not been paid.

percent. In January 1992, Customs demanded that General Bearing pay the applicable duties owed on the Group I entries. Almost immediately, General Bearing protested, asserting that the merchandise had been manufactured by companies participating in the first administrative review and, therefore, was entitled to the company-specific duty rate.[8]

In February 1992, General Bearing refused to pay the outstanding duties on the Group I entries and, pursuant to the terms of the surety agreement, Customs sought payment from Washington International.[9] Washington International timely protested the rate at which the Group I entries were liquidated and Custom's demand for payment. The protest alleged grounds identical to those put forth by General Bearing in its protest – *i.e.* the bonded entries had been manufactured by companies participating in the first administrative review thereby making them eligible for liquidation at the company-specific duty rate.

Customs denied Washington International's protest on May 5, 1992, stating that its original liquidation determinations were correct. Following the denial of its protest, in May 1992, Washington International paid the duties demanded on twelve of the Group I entries.[10]

---

[8] The United States asserts General Bearing's protests were granted through the bankruptcy settlement.

[9] The surety bonds state, in relevant part:

> Principal and Surety agree that any charge against the bond under any of the listed names is as though it was made by the principal(s).
> Principal and Surety agree that they are bound to the same extent, as if they executed a separate bond covering each set of conditions incorporated by reference to the Customs Regulations into this bond.

Also, the surety bonds directly incorporated Customs regulation 19 C.F.R. §113.62 (1994), which provides:

> (a)      *Agreement to Pay Duties, Taxes, and Charges*
> (1)      If merchandise is imported and released from Customs custody or withdrawn from a Customs bonded warehouse into the commerce of, or for consumption in, the United States, the obligors (principal and surety, jointly and severally) agree to:
> (ii)      pay, as demanded by Customs, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond.

[10] Washington International argues that it paid in excess of $122,000.00 on the twelve Group I entries. It is unclear to the Court why Washington International did not pay the demanded duties on the thirteenth entry at the time the other twelve were paid. It is undisputed, however, that the duties on this entry were not paid until after this case was initiated and, therefore, this entry falls outside the jurisdiction of this Court.

On July 16, 1993, Customs liquidated the thirty Group II entries. Bills were issued to Washington International and demand for payment was made. Washington International refused to pay the demanded duties, but did not protest Custom's liquidation. To date, the duties on the Group II entries have not been paid.

**B.      General Bearing Corporation's Bankruptcy Proceeding and Settlement**

On September 16, 1991, subsequent to the dates of importation but prior to the liquidation of the entries involved in this action, General Bearing filed a Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Southern District of New York. *See In re General Bearing Corp.*, Bankr. Court Nos. 91-B-21424, 91-B-21425, 91-B-21426 (Bankr. S.D.N.Y. 1991). General Bearing informed Customs that its pending bankruptcy proceedings precluded it from paying any duties owed on the Group I entries. Based on this information, Customs seized approximately $4.4 million in cash deposits posted by General Bearing to secure certain of its entries and issued bills to General Bearing for the thirteen bonded entries in Group I.[11] As indicated above, Washington International paid the duties demanded on twelve of these entries.

General Bearing, as debtor-in-possession, sought to overturn Customs' seizure of its cash deposits. To this end, General Bearing initiated an adversary proceeding against the United States seeking to recover the cash deposits. *See* Bankr. Adv. No. 92-5067A (Bankr. S.D.N.Y. March 3, 1992). General Bearing argued that because Customs had not liquidated the entries secured by the cash deposits prior to initiation of the bankruptcy proceedings, the cash deposits belonged to the bankruptcy estate. Additionally, General Bearing argued Customs' seizure of

the cash deposits violated the automatic stay imposed by 11 U.S.C. § 362(a) freezing any and all collection actions initiated by General Bearing's creditors.[12]  On May 20, 1992, the United States denied General Bearing's allegations and asserted various affirmative defenses, including the right to offset General Bearing's outstanding duty obligation with any property held by the United States.  Washington International neither had notice of, nor was a party to, this action.

In September 1992, General Bearing and the United States agreed to a stipulation and settlement order terminating the adversary proceeding.  The settlement order was approved and "So-ordered" by the bankruptcy court.  Under the terms of the settlement, the United States agreed Customs would reliquidate the entries secured both by cash deposit and surety bond.  The company-specific rate of 23.88% would be applied if documentation could be produced verifying the company's participation in the first administrative review.  The settlement order established a payment scheme to refund General Bearing any excess duties due it as a result of the reliquidation, conditioned on the premise that the United States received full payment from Washington International of all outstanding duties.  Pursuant to the settlement order, the United States would make demand to Washington International for all duties owed on any outstanding entries for which Washington International served as surety.  If Washington International refused to pay the duties, the United States would use a portion of General Bearing's refund to offset the debt owed on the bonded entries. The settlement order stated, in relevant part:

---

[11] The facts demonstrate that bills were sent on at least the thirteen entries cited in Washington International's complaint in CIT No. 92-11-00720.  Customs states that, although the remaining thirty entries were liquidated, bills were never issued to General Bearing or Washington International.

[12] 11 U.S.C. §362(a) provides in relevant part:

      (a)      Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title… operates as a stay, applicable to all entities of …

            (6)      any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

            (7)      the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

7.      Within 50 days of its receipt of a liquidation order from Commerce under this Settlement, Customs shall liquidate the entries covered by the liquidation order, or reliquidate in response to a valid Customs Claim, in accordance with the liquidation order. Fifty percent of all refunds due to General Bearing shall be paid within ten days of the effective date of liquidation. The remaining fifty percent [of the refund] shall be held for one hundred days after which time it shall be paid to General Bearing, subject to any offset made by Customs in accordance with Paragraph 12 of this Stipulation of Settlement….

12.     With respect to entries covered by surety bonds, Customs shall attempt to secure payment from General Bearing's surety (the "Surety"). General Bearing shall use its best efforts to provide Customs, within fourteen days from the date of this Order, with the documentation needed by Customs to secure such payment. In the event that the Surety refuses to pay on demand, and continues to refuse even after the Commissioner of Customs issues instructions to the District Directors and Regional Commissioners of Customs that they shall not accept a bond secured by the Surety, Customs shall have the right to offset the amount owed against any deposit then held by Customs.

In exchange for the restructured payment priority and refund of its cash deposits, General Bearing agreed to forgo any claim that the cash deposits were property of the bankruptcy estate and that the seizure of these deposits violated the automatic stay.

Between June and October 1993, Customs reliquidated the Group I entries, as well as the entries secured by the seized cash deposits. Additionally, in July 1993, the United States liquidated 27 of the Group II entries. Bulletin notices of reliquidation were posted at relevant ports of entry and refund checks were issued by Customs to General Bearing. The refund included money that was paid by Washington International and, thus, was erroneously paid to General Bearing. Pursuant to 19 C.F.R. §24.36(a) & (b) (1994), the refunds should have been issued to the party that originally paid the duties – Washington International. Washington International did not protest the reliquidation or the wrongful refund to General Bearing.

**C. Filing Suit with the Court of International Trade**

1. CIT No. 92-11-00720

On October 30, 1992, subsequent to the settlement order between General Bearing and the United States but prior to the reliquidation of the Group I entries, Washington International filed a summons with this Court initiating CIT No. 92-11-00720. On July 28, 1994, Washington International filed its complaint containing three counts challenging Customs' actions with respect to the Group I entries. Count I asserts Customs erroneously liquidated the relevant bonded entries at the rate of 44.76% as opposed to the company-specific rate applicable to participants in the first administrative review.[13] Washington International argues these entries should be reliquidated at the lower rate. Count II asserts that because it had paid the original duties on the cited entries it was entitled to any resulting refund. Washington International seeks a money judgment in the amount of the refund issued to General Bearing. Count III asserts that the settlement order entered into by General Bearing and the United States impermissibly altered the nature of the principal/surety relationship between General Bearing and Washington International. Specifically, Washington International contends that the settlement order substantially and materially increased its risk by narrowing the circumstances in which the government would exercise its regulatory right to set-off under 19 C.F.R. §24.72 (1994).[14] As a result of this material alteration, Washington International seeks a declaratory judgment discharging it from all outstanding liability under the bond agreements covering the Group I entries. On all counts, Washington International submits this Court possesses jurisdiction under

---

[13] Washington International claims that regardless of the individual rate applied, in no event can the duty exceed the 23.88% rate that was established as the maximum company-specific rate in the first administrative review.

[14] 19 C.F.R. 24.72 provides:

When an importer of record or other party has a judgment or other claim allowed by legal authority against the United States, and he is indebted to the United States, either as principal or surety, for an amount which is legally fixed and undisputed, the district director shall set off so much of the judgment or other claim as will equal the amount of the debt due the Government.

28 U.S.C. §1581(a) or, alternatively, 28 U.S.C. §1581(i). The United States has denied all substantial allegations in Washington International's complaint.

 2. CIT No.96-10-02466

On October 30, 1996, the United States filed its complaint in CIT No. 96-10-02466, initiating the second case in this consolidated action. The United States brought suit under 28 U.S.C. §1582(2) and (3) to recover from Washington International unpaid duties on the Group II entries in the principal amount of $308,101.48. In its complaint, the United States raised thirty counts against Washington International, each pertaining to the duties owed on a specific Group II entry.[15] As to each count, the United States claims: (1) that Washington International had contracted with General Bearing through either single transaction bonds or continuous bonds to act as surety for the importation of bearings from Japan; (2) bearings covered by the surety agreements were imported into the United States; (3) the duties for the imported bearings were fixed and undisputed; (4) demand for payment of these duties was unsuccessfully and continuously made on Washington International; and (5) the outstanding duties are still owed on the relevant entries.

Washington International admits the first three of the claims listed above. It denies, however, claims four and five for "lack of information or knowledge sufficient to form a belief as to the truth of the allegation." Additionally, Washington International raises six affirmative defenses: (1) the action is barred in whole or part by the expiration of the applicable period of limitations; (2) the action is barred by the doctrine of estoppel; (3) the action is barred by the doctrine of waiver; (4) the action is barred by the doctrine of accord and satisfaction; (5) the failure of the United States to utilize the cash deposits it had on hand from the importer to offset

the debt owed by the importer as a result of the subject entries constitutes a release of the surety and a discharge of its bond obligations; and (6) the issuance of a refund by the United States to General Bearing and the agreement to issue said refund constitutes a release of the surety and a discharge from its bond obligations.

## DISCUSSION

Several potentially dispositive motions are before the Court in this consolidated action. With respect to the Group I entries in CIT No. 92-11-00720, Washington International has filed a motion for summary judgement and the United States has filed a motion to dismiss and a cross-motion for summary judgment. In CIT No. 96-10-02466, the parties have filed cross-motions for summary judgment on the Group II entries. The following sections will address each motion independently.

### A.      United States Motion to Dismiss CIT No. 92-11-00720 – the Group I Entries

1.      <u>Contentions of the Parties</u>

(a)      *The United States*

The United States challenges this assertion and argues this Court does not have jurisdiction under either 28 U.S.C. §§1581(a) or 1581(i). (Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment, at 15.) (Defendant's Motion to Dismiss). Accordingly, the United States urges this Court to dismiss CIT No. 92-11-00720 in its entirety.

(i)      *28 U.S.C. §1581(a) Jurisdiction:*

---

[15] For a full list of the entries at issue in CIT No. 96-10-02466 see footnote 4.

The United States contends that 19 U.S.C. §1581(a) limits this Court's jurisdiction to "civil action[s] commenced to contest the denial of a protest, in whole or in part." (Defendant's Motion to Dismiss, at 16, 19). To have jurisdiction over CIT No. 92-11-00720, the United States argues Washington International must have filed with Customs a valid and timely protest that was subsequently denied.[16] (Id., at 19.) Although acknowledging that on May 5, 1992, Washington International timely protested the liquidation of Group I Entry Nos. C15-0008303-0; C15-0008318-8; C15-0008357-6; C15-0008363-4; C15-0008375-8; C15-0008380-8; C15-0009794-9; C15-0008342-8; C15-0008362-6; C15-0008312-2; and C15-0008321-2,[17] the United States argues that this protest was rendered moot by Customs' subsequent reliquidation of these entries. (Id., at 20-21.) The United States submits that on June 25 and June 29, 1993, Entry Nos. C15-0008303-0; C15-0008318-8; C15-0008351-9; C15-0008357-6; C15-0008363-4; C15-0008375-8; C150008380-8; C15-0009794-9; C15-0008342-8; C15-0008362-6; C15-0008312-2; and C15-0008321-2 were "reliquidated" and bulletin notices properly posted at the relevant ports of entry triggering the ninety days within which Washington International could protest the reliquidations. (Id.)

Washington International failed to protest these reliquidations or the refunds issued to General Bearing. Absent a timely protest, the United States contends the reliquidation was final and conclusive on Washington International and not subject to judicial review. (Id., at 21.) The United States argues that Washington International failed to avail itself of its administrative remedies and thereby satisfy the condition precedent to 28 U.S.C. § 1581(a) jurisdiction. (Id., at 25-26.) As a result, the United States argues this Court lacks jurisdiction to adjudicate the merits of Washington International's claims under 28 U.S.C. §1581(a). (Id.)

---

[16] The United States points to 19 U.S.C. §1514(c)(5) as authority for its argument. This section provides that a protest must be filed within 90 days of notice of liquidation or reliquidation.

(ii)     *28 U.S.C. §1581(i) Jurisdiction:*

The United States argues this Court may not exercise 28 U.S.C. §1581(i) jurisdiction over CIT No. 92-11-00720. (Id., at 32.)  Specifically, with respect to Count I and Count II, the United States maintains 28 U.S.C. §1581(i) jurisdiction is proper only where jurisdiction *could not* have been obtained under any of the preceding subsections in section 1581. (Id., at 28) (emphasis added).  Thus, because Washington International could have filed a proper and timely protest of Customs' reliquidation and erroneous refund, it could have obtained jurisdiction under 28 U.S.C. §1581(a). (Id., at 29.)  The United States argues that 28 U.S.C. §1581(i) was never intended to serve as a backdoor through which a party could gain entry to court after failing to satisfy the jurisdictional prerequisites that would open the front door – *i.e.* sections (a) – (h). (Id.)  Accordingly, because neither 28 U.S.C. §1581(a) nor §1581(i) apply, the United States argues this Court lacks all bases for jurisdiction to adjudicate Count I and Count II of Washington International's complaint.

The United States further asserts this Court lacks jurisdiction over Count III of Washington International's complaint. (Id., at 30.)  In Count III Washington International seeks discharge of its obligations under the surety bond contracts because the United States failed to exercise its regulatory right of set-off against General Bearing's outstanding debt.  The United States argues that because 19 C.F.R. §24.72 was not specifically intended to benefit the surety but rather to protect the government, the obligations therein may not be read into the surety's bond contracts.  (Id., at 30-31.)  Therefore, the United States maintains: (1) it was under no obligation to offset General Bearing's debt and, thus Washington International's claim is without

---

[17] This protest was subsequently denied by Customs.

merit; and (2) there are no grounds under which this count could be brought under the auspices of 28 U.S.C. §1581(i). (Id., at 31-32.) Accordingly, the United States argues Count III should be dismissed.

(b) *Washington International*

Washington International asserts that jurisdiction over the entirety of its action properly resides in this Court pursuant to 28 U.S.C. §§ 1581(a) or 1581(i). (Plaintiff's Reply Memorandum and Opposition to Defendant's Motion to Dismiss and for Summary Judgment, at 5.) (Plaintiff's Reply Memorandum). With respect to 28 U.S.C. §1581(a), Washington International argues two points. First, although acknowledging that reliquidation is normally a protestable decision within the context of 19 U.S.C. §1514, Washington International argues that, as a surety, it had "no grounds to contest the reliquidations in this case." (Plaintiff's Reply Memorandum, at 6-7.) Washington International characterizes the reliquidation as merely an "administrative vehicle to implement the settlement negotiated between General Bearing and the United States" that "resulted in a lower duty burden on General Bearing and Washington International." (Id., at 7.) (emphasis in brief).

Second, Washington International argues jurisdiction is proper because at the time the purported "reliquidation" was conducted the relevant Group I entries were already under the jurisdiction of this Court. (Id.) CIT No. 92-11-00720 was filed prior to the reliquidation but subsequent to the denial of Washington International's original protest, thus arguably distinguishing the present case from the cases cited by the United States indicating that reliquidations must be protested in order to give rise to 28 U.S.C. §1581(a) jurisdiction. (Id.) Washington International distinguishes the cited cases because they involved reliquidation of entries *prior* to the commencement of a court action challenging the original protests. (Id.)

Thus, the timeline would be as follows: entry → liquidation → denial of protest → reliquidation → *litigation*. In the present case, Washington International argues there is a crucial difference in the procedural timeline: entry → liquidation → denial of protest → *litigation* → reliquidation. Washington International urges that because the alleged reliquidations occurred some seven months *after* CIT No. 92-11-00720 had been commenced, jurisdiction had already vested with this Court and could not be removed by subsequent agency action. (Id.) Washington International argues that to accept the government's position would grant Customs the authority to "undermine virtually every action commenced under section 1581(a), by issuing even a one cent refund and requiring the importer to protest the reliquidation" and would "wreak havoc with this Court's jurisdiction." (Id. at 7-8.)

Finally, Washington International argues that in the absence of 28 U.S.C. §1581(a) jurisdiction, the unusual sequence of events in the present case gives rise to 28 U.S.C. §1581(i) jurisdiction over all Counts in its complaint. (Id., at 8.) Washington International notes that 28 U.S.C. §1581(i) provides a jurisdictional basis for challenges not addressed by the other provisions of section 1581 or where the other subsections are manifestly inadequate. (Id., at 9.) In the present case, Washington International asserts the facts clearly demonstrate that a protest of the reliquidation would have been futile, thereby creating a situation in which 28 U.S.C. §1581(a) jurisdiction was manifestly inadequate.

2.    Analysis

Federal courts have limited jurisdiction and absent contrary evidence must presume a cause of action lies outside of that jurisdiction. *See Kokkonen v. Guardian Life Insurance Company of America,* 511 U.S. 375, 377 (1994). The party seeking to bring an action must

prove it properly comes within a federal court's jurisdictional scope. *Elkam Metals Co. v. United States*, 44 F. Supp. 2d 288, 294 (Ct. Int'l Trade 1999). Accordingly, before this Court can judge the merits of Washington International's legal claims, it is imperative to determine whether there exists the jurisdictional authority to so adjudicate.

(a) *The Court Possesses 28 U.S.C. §1581(a) Jurisdiction Over Count I of CIT No. 92-11-00720.*

The facts and circumstances precipitating this consolidated action create uniquely complex jurisdictional questions. Washington International filed a timely and valid protest with Customs that was subsequently denied. In response, Washington International initiated suit in this Court and claimed jurisdiction under 28 U.S.C. §§ 1581(a) or 1581(i). Subsequent to the filing of suit, the United States engaged in conduct that it now claims divests this Court of jurisdiction over this action.

The principal statutory provision granting this Court jurisdiction over Customs' actions, 28 U.S.C. §1581(a), states that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." The United States argues that when Customs reliquidates an entry pursuant to a valid protest or because it believes the original liquidation was incorrect, the "[r]eliquidation vacates and is substituted for the collector's original liquidation." *Mitsubishi Electronics America, Inc. v. United States*, 865 F. Supp. 877, 879 (Ct. Int'l Trade 1994), *quoting*, *United States v. Parkhurst & Co.*, 12 Ct. Cust. 370, 372-272 (Ct. Cust. App. 1924). Moreover, the United States argues this Court, as a general rule, has interpreted 28 U.S.C. §1581(a) to require a party to protest reliquidations as a prerequisite to judicial review. Because Washington International failed to protest Customs' reliquidation, the

United States urges that a necessary element of this Court's 28 U.S.C. §1581(a) jurisdiction is missing – the denial of a protest.

The United States is correct that this Court, as a general rule, has required parties to protest a reliquidation as a jurisdictional prerequisite to obtaining judicial review under 28 U.S.C. §1581(a). *See, e.g., SSK Industries, Inc. v. United States*, 101 F. Supp. 2d 825, 829 (Ct. Int'l Trade 2000). The United States acknowledges, however, this general rule arose from cases in which a plaintiff filed suit *after* Customs had reliquidated the relevant entries; thus these cases are factually distinguishable from the present case.[18] (Reply Memorandum in Response to Plaintiff's Opposition to Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment, at 9.) (United States Reply Memorandum). Nonetheless, the United States argues the rule of law cited in these cases applies with the same force in cases where a purported "liquidation" occurs after a lawsuit has been properly filed. (Id.) In other words, the United States argues the rule applies to "post-summons" liquidations and, therefore, applies to the present dispute. Unfortunately, the United States' argument would require this Court to construe the cases it cites in a manner that contradicts recognized legal principles.

There exists a long-standing rule in federal courts that subject-matter jurisdiction is determined at the time the suit is filed and, after vesting, cannot be ousted by subsequent events. *See, e.g., F. Alderete General Contractors, Inc. v. United States*, 715 F.2d 1476, 1480 (Fed. Cir. 1983). This rule has been interpreted to include not only the acts of individual litigants, but also to "preclude subsequent agency action from divesting [a] court of jurisdiction, once jurisdiction is established." *International Graphics v. United States*, 4 Cl.Ct. 186, 193 (Cl. Ct. 1983), *citing*, *F. Alderete General Contractors*, 715 F.2d at 1481.

The Court recognizes this rule has been infrequently applied to federal question cases and that courts have been willing to disregard it when the circumstances so warrant. *See New Rock Asset Partners v. Preferred Entity Advancement Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996). The Court finds, however, that the rule's underlying purpose compels its application in the present case. As the Third Circuit noted in *New Rock Asset Partners*, 101 F.3d at 1504, this rule is primarily intended to prevent the manipulation of federal jurisdiction, promote judicial efficiency, and constrain the use of strategic behavior by litigants. To accept the United States' argument that 28 U.S.C. §1581(a) requires the protest and denial of post-summons liquidations would, in effect, condone the very conduct the rule was intended to prevent and would be tantamount to granting Customs the authority to hinder, delay, and frustrate judicial review through arbitrary post-summons liquidations. Such a grant of authority would waste judicial resources by placing 28 U.S.C. §1581(a) cases in a figurative revolving door spinning in and out of court at Customs' whim. This would confer upon Customs an inequitable ability to control the course of a plaintiff's litigation, thereby discouraging potential litigants from pursuing their rightful claims under 28 U.S.C. §1581(a). Cloaked in a shroud of procedural legitimacy, Customs could unilaterally hinder the judicial process and arbitrarily divest this Court of jurisdiction over legitimate legal claims. The Court, therefore, agrees with Washington International that to apply the jurisdictional prerequisite found in 28 U.S.C. §1581(a) to post-summons liquidations could "undermine every action commenced under section 1581(a)" and thereby "wreak havoc on this Court's jurisdiction." (Plaintiff's Reply Memorandum, at 8).

Jurisdiction over Customs' actions is measured at the time the summons is filed. Once entries are properly before the Court, Customs is powerless to exert authority over these entries

---

[18] For clarity and to distinguish the present dispute from the cases cited by the United States in which the reliquidation occurred prior to the filing of a summons, the Court will refer to the purported reliquidation that

in the absence of a Court order. As such, Customs' purported "reliquidation" is a nullity. The fact that Customs acted pursuant to the bankruptcy settlement order is irrelevant. The Court recognizes that comity ordinarily invites the courts of one jurisdiction to give effect to the judicial decisions of another court. Comity is an equitable principal designed to preserve judicial resources and to avoid the embarrassment of conflicting judgments. *See Church of Scientology of California v. United States Army*, 611 F.2d 738, 749 (9th Cir. 1979). These concerns, however, are not implicated where a court enters an order affecting subject matter outside the scope of its jurisdiction and compelling a party to take actions for which it does not possess authority. The Bankruptcy Court "So-ordered" Customs to reliquidate entries for the purpose of reassessing applicable antidumping duty rates. The Court of International Trade has been granted exclusive jurisdiction over issues arising out of the trade laws and it is clear that reliquidation for this or any other purpose falls squarely within this exclusive jurisdiction.

At no time before entering into the settlement agreement did Customs seek permission from this Court to specifically reliquidate the Group I entries. This failure placed Customs between the proverbial "rock and a hard place." If Customs failed to implement the terms of the settlement it would have been in breach of the bankruptcy order. At the same time, implementation of that order required Customs to act outside its authority and without any reasonable belief that this Court would recognize or accept the reliquidation of the Group I entries. Had Customs been more cognizant of the settlement order's ramifications, and had it been more concerned with the sanctity of this Court's jurisdiction, the Bankruptcy settlement agreement would never have been agreed to in its present condition. Customs, however, chose to enter into this agreement and now must abide by the ramifications of its choice.

---

occurred in the present case as a "post-summons" liquidation.

The Court finds Customs' "reliquidation" of the Group I entries to be a nullity. Accordingly, Washington International's original protest remains valid and the Court has jurisdiction over Count I of Washington International's complaint pursuant to 28 U.S.C. §1581(a). The United States' motion to dismiss Count I is denied.

> *(b)* *The Court Does Not Possess 28 U.S.C. §1581(i) Jurisdiction over CIT No. 92-11-00720.*

Washington International argues this Court has jurisdiction over Count II and Count III of its complaint pursuant to 28 U.S.C. §1581(i). Although recognizing that the alleged wrongful refund of excess duties paid on the Group I entries was a protestable decision, Washington International argues it would have been futile to file such a protest in light of the bankruptcy settlement order.

Assuming, *arguendo*, that Washington International's futility argument is correct, this Court could not exercise 28 U.S.C §1581(i) jurisdiction in this case because of Washington International's failure to adhere to procedural requirements set forth in 28 U.S.C. §2632(a) and USCIT R. 3(a). Congress, in 28 U.S.C. §2632(a) explicitly set forth the manner in which a civil action may be commenced in this Court. Specifically, Congress provided that:

> Except for civil actions specified in subsections (b)[19] and (c)[20] of this section, a civil action in the Court of International Trade shall be commenced by filing *concurrently* with the clerk of the court a summons and complaint, with the content and in the form, manner, and style prescribed by the rules of the Court. (emphasis added).

The Court, pursuant to the mandate set forth in this statute, adopted Rule 3(a) which states: "A civil action is commenced by filing with the clerk of the court… (1) a summons in an action

---

[19] Allows for a civil action brought under section 515 or 516 of the Tariff Act of 1930 to be commenced by the filing of a summons only.

[20] Allows for a civil action brought under section 516A of the Tariff Act of 1930 to be commenced by the filing of a summons only, or by the filing of a summons and complaint.

described in 28 U.S.C. §1581(a) or (b); (2) a summons, and within 30 days thereafter a complaint, in an action described in 28 U.S.C. §1581(c) to contest a determination listed in section 516a(a)(2) or (3) of the Tariff Act of 1930, or; (3) *a summons and complaint in all other actions*." (emphasis added).

Washington International filed its summons in CIT 92-11-00720 in 1992 initiating a suit under 28 U.S.C. §1581(a). As stated, the complaint was not filed until 1994, thereby depriving the United States of any notice that it would be sued for these actions. Washington International has unsuccessfully attempted to bootstrap two 28 U.S.C. §1581(i) counts onto a 28 U.S.C. §1581(a) case. Past attempts show that it is extremely difficult for a party to join claims raised under 28 U.S.C. §1581(a) and 28 U.S.C. §1581(i) in a single action and, as such, these divergent claims are typically raised in separate lawsuits. In cases, however, where a plaintiff seeks to join the two issues in one lawsuit, the plaintiff must ensure it complies with the procedural requirements for both types of cases. Failure to do so will preclude the Court from exercising jurisdiction over what otherwise would be a legitimate legal claim. Accordingly, the Court finds that it does not possess 28 U.S.C. §1581(i) jurisdiction over Count II and Count III of Washington International's complaint. The United States' motion to dismiss is granted as to these two counts.

3.      Conclusion

This Court finds that it possesses jurisdiction under 28 U.S.C. §1581(a) to adjudicate Count I of CIT No. 92-11-00720. Jurisdiction does not exist to adjudicate Counts II and III. Accordingly, the United States' motion to dismiss CIT No. 92-11-00720 is granted in part and denied in part.

B.      **Cross-Motions for Summary Judgment in CIT No. 92-11-00720 – the Group I Entries**

   1.      Analysis

Under the rules of this Court, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c). Summary judgment, however, cannot serve as a substitute for trial and thus, the Court's function is not to resolve factual issues but to determine whether there are any factual disputes material to the resolution of the case. *See Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1570 (Fed. Cir. 1991), *citing*, *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1461 (Fed. Cir. 1990). If a material dispute of fact is present, summary judgment is not proper.

The United States raises a genuine issue of material fact that renders summary judgment inappropriate in the present case. In its papers, the United States argues the reliquidation of the Group I entries at the lower, company-specific duty rate was erroneous because no evidence exists demonstrating that the relevant manufacturers participated in the first administrative review. In other words, the United States argues the reliquidation was a mistake. Absent proof of participation, the United States argues the Group I entries were properly liquidated at the "all others" duty rate and Washington International is not entitled to any refund.

Washington International counters by asserting that "it is disingenuous for the Government to argue the reliquidation was a mistake." (Plaintiff's Reply Memorandum, at 14). Washington International argues that through the bankruptcy settlement, "the United States and [General Bearing] concurred that the amount of duty due and owing on the subject entries was

the amount as provided in the Final Results of the Administrative Review, i.e., 23.88%."

(Washington International's Motion for Summary Judgment, at 9). After this agreement was

"So-ordered" by the bankruptcy court, the relevant entries were reviewed by an "import-

specialist" and a "supervisory import-specialist" and the reliquidations occurred. To Washington

International, this constitutes prima facie evidence that the Group I entries were properly

reliquidated at the 23.88% duty rate.

Finally, Washington International points to a letter from Customs to General Bearing's

bankruptcy counsel that stated:

> Finally, in the liquidations resulting from the 1992 and 1993 settlement agreement
> between Customs and General Bearing, Customs inadvertently issued $64,398.24 to
> General Bearing of duties which had been paid by General Bearing's surety, Washington
> International Insurance Company.

Washington International argues that "had [Customs] truly believed that the reliquidations were

in error, it would have been far simpler for Customs to have stated that fact" and thus "the full

and only inference which may be drawn from Customs' letter is that the refunds were

erroneously issued to General Bearing, not that the reliquidations were in error." (Plaintiff's

Reply Memorandum, at 15.)

The Court has already determined the purported "reliquidation" ordered by the

bankruptcy court to be a nullity. As such, the Court declines to rely upon this order as evidence

of the Group I entries' eligibility for reliquidation. Similarly, for purposes of this motion the

Court is bound to view the evidence in a light most favorable to the non-moving party – the

United States – and as such, cannot draw the inference urged by Washington International. The

record evidence before the Court is insufficient to negate the genuine issue of material fact raised

by the United States. Similarly, the issue cannot be resolved by resort to the parties; USCIT R.

56(i) statements. Accordingly, the issue of whether the manufacturers of the Group I entries

participated in the first administrative review and, therefore, are entitled to a company-specific rate cannot be resolved by summary judgment.

    2.    <u>Conclusion</u>

The Court finds a genuine issue of material fact to be present regarding the eligibility of the Group I entries for reliquidation at a company-specific rate. Washington International's motion for summary judgment with respect to Count I CIT No. 92-11-00720, therefore, is denied. The United States cross-motion for summary judgment is also denied. Pursuant to the attached order, the parties are instructed to confer with each other as to the nature of the discovery to be taken on this issue and to schedule a conference with the Court to establish a formal timetable for the efficient disposition of this matter.

**C.    Parties Cross-Motions for Summary Judgment in CIT No. 96-10-02466 – the Group II Entries**

As indicated above, the United States initiated CIT No. 96-10-02466 to compel payment of unpaid duties from Washington International in the principal amount of $308,101.48, plus pre- and post-judgment interest as required by law. It is undisputed that between November 10, 1988 and May 31, 1989, General Bearing imported the thirty Group II entries. On April 19, 1986, General Bearing, as principal, and Washington International, as surety, made, executed, and delivered to Customs a "continuous entry bond" in the amount of $100,000.00. This bond secured six of the Group II entries. The remaining twenty-four entries were each secured by separate "single-transaction bonds." Customs liquidated three of the Group II entries on December 6, 1991 and the remaining twenty-seven entries on July 16, 1993 at the rate of 44.76 percent. To date, these duties have not been paid.

1.      Contentions of the Parties

a.      *The United States*

The United States' contentions are straightforward.  The main thrust is that the unambiguous language of the "continuous entry" and "single transaction" bonds jointly and severally obligates Washington International and General Bearing to pay any duties determined to be legally due.  (Memorandum in Support of Plaintiff's Motion for Summary Judgment, at 5) (United States Motion for Summary Judgment).  Washington International expressly agreed to bind itself to the same extent as the principal, General Bearing, for the duties owed to the United States arising from liquidation of the subject entries.  (Id., at 12.)  Accordingly, the United States argues Washington International entered into a contractual relationship whereby it agreed to be answerable up to the limit of its bonds as through it were the principal.  (Id., at 13).  Additionally, the United States rejects Washington International's affirmative defenses as without merit and urges this Court to dismiss them in their entirety.

b.      *Washington International*

Washington International contests neither the validity of the relevant surety bonds nor the contractual liability attendant thereto.  To the contrary, Washington International recognizes the bonds render it jointly and severally liable with General Bearing for any unpaid duties on the Group II entries.  Despite this recognition, Washington International asserts several "non-contractual, common law defenses… to excuse [its] performance." (Defendant's Response to Motion for Summary Judgment and Cross Motion for Summary Judgment, at 6) (Washington International's Response Motion.)

As noted above, Washington International asserts six affirmative defenses in its answer. (Washington International's Answer, at 18-19.)  In both its motion for summary judgment and in response to the United States' summary judgment motion, however, Washington International merges these defenses into a single contention: that the bankruptcy settlement materially increased its contractual risk by limiting the conditions under which the United States would setoff General Bearing's debts.  Thus, the settlement operates as a discharge of its underlying bond obligations.  (Washington International's Response Motion, at 6-7.)

### 2.    Analysis

There is no question as to the Court's jurisdiction over the United States' claims in CIT No. 96-10-02466.  This Court has been granted express authority to adjudicate "any civil action which arises out of an import transaction and which is commenced by the United States… (2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury… or (3) to recover customs duties."  28 U.S.C. §1582(2) & (3) (1994).  The United States seeks to recover upon twenty-five bonds securing antidumping duties on the thirty Group II entries.

This case, however, involves more than the recovery of duties.  It requires this Court to examine the contractual relationship between a surety, a principal, and a creditor.  Although this relationship is typically governed by state law, the parties assert and the Court agrees that federal common law applies. (Supplemental Memorandum of Washington International Insurance Company, at 1-2; Government's Memorandum of Law, at 2.)  *See also, United Pacific Ins. Co. v. United States*, 70 F. Supp. 2d 1089, 1093 (9th Cir. 1999); Restatement (Third) of Suretyship and Guaranty § 1, Introductory Note, pp 3-4 (1996) ("the rules in the Restatement apply to any

transaction *regardless of its form* that fulfills the criteria for suretyship…) (Restatement (Third)). The Court, therefore, must apply not only federal statutory and regulatory guidelines governing Customs' conduct, but where these guidelines fail to address certain issues, the Court must look to the general principles of suretyship law as reflected in federal case law, the Restatement (Third), and non-conflicting state law. *See, e.g., Axess International, Ltd. v. Intercargo Ins. Co.*, 183 F.3d 935 (Fed. Cir. 1999) (noting the usefulness of the Restatement (Third) as a yardstick against which surety issues should be measured).

Washington International seeks discharge from its bond obligations on the grounds that the bankruptcy settlement between the United States and General Bearing materially increased its contractual risk by limiting the terms under which the United States would offset General Bearings' outstanding debt.[21] The federal common law is clear that when a surety's contractual obligation is materially altered without its knowledge or consent in a manner that increases its risk, the surety is to be discharged to the extent that it is prejudiced or damaged. *See, e.g., National Surety Corp. v. United States*, 118 F.3d at 1544-45, *quoting*, *United States v. Reliance*, 799 F.2d 1382, 1385 (9th Cir. 1986); Restatement (Third) § 37.[22] Although acknowledging that the bankruptcy settlement agreement increased Washington International's exposure under the bonds, the Court finds that the agreement in no way materially altered the bonds' contractual terms.

---

[21] The Court notes that Washington International fails to address the fact that once a bankruptcy petition is filed, the automatic stay provision of 11 U.S.C. §362(h) prevents the application of the government's right to setoff. Setoff could occur only where the United States petitioned the bankruptcy court to lift the automatic stay.

[22] Restatement (Third) §37 provides: "(1) If the obligee acts to increase the secondary obligor's risk by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance, the secondary obligor is discharged as described in sections (2) and (3). An act that increases the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential to cause the principal to bear the cost of performance is an 'impairment of suretyship status.'"

The language of the bonds entered into by Washington International, General Bearing, and Customs is sparse with respect to the obligations assumed by each party. The totality of the relevant language is as follows:

> In order to secure payment of any duty, tax, or charge and compliance with law or regulation as a result of activity covered by any condition referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts as set forth below.

> Principal and surety agree that any charge against the bond under any of the listed names is as though it was made by the principal(s).

> Principal and surety agree that they are bound to the same extent as if they executed a separate bond covering each set of conditions incorporated by reference to the Customs Regulations into this bond

The joint and several liability stemming from this language grants the United States the discretionary authority to seek payment of outstanding duties from Washington International independently of any action that may be brought against its principal. The bankruptcy settlement agreement implicitly acknowledged this discretion and established Washington International as the party from which payment would initially be sought. Nothing in the language exposed Washington International to any greater risk, materially altered any of the contractual provisions in a manner that increased its contractual liability, nor impermissibly altered the payment structure of the bonds. To the contrary, Washington International remained liable for the full amount of duties for which it agreed to serve as surety and was free to exercise its legal right of redemption against General Bearing's estate.

Just as the bankruptcy settlement agreement did not materially alter Washington International's contractual liability, it did not limit Customs' contractual obligation to exercise setoff. In fact, it would have been impossible for the settlement agreement to limit Customs' contractual setoff obligations because the bond neither contains language imposing such an

obligation, nor explicitly incorporates Customs' setoff regulation – 19 C.F.R. §24.72. In the absence of such explicit language, the Court declines to implicitly incorporate this regulation into Customs' surety bonds. Additionally, the Court notes that by lifting the automatic stay so as to allow implementation of the bankruptcy settlement order, the Bankruptcy Court, in essence, broadened the United State's opportunities to conduct setoff.

In the absence of a material alteration to its contractual agreement, the Court possesses no legal grounds to discharge Washington International from its obligations under the surety bonds. The Court of International Trade, however, possesses power both in law and equity. *See* 28 U.S.C. §1585 (1994). There are two well-established equitable rules that allow courts under certain circumstances to provide a surety relief in the absence of a material alteration of its contractual obligations.

First, where a principal is insolvent and there is danger of hardship to the surety, a court of equity, at the insistence of the surety, may require a creditor to resort to any collateral security of the principal debtor *in the hands of the creditor* before resorting to the surety or any security provided by it if this can be done without substantially injuring the creditor. (emphasis added) *See Yale Express System, Inc. v. Boston Insurance Company*, 362 F.2d 111, 114-15 (2d Cir. 1966). *See also,* 72 C.J.S. *Principal and Surety* §219; Restatement (Third) §35, Comment on Paragraph D ("[i]f… the principal obligor is insolvent and enters bankruptcy, denying the secondary obligor the ability to utilize [setoff] would have the usual effect of giving the obligee the ability to determine whether the secondary obligor received the full benefit of the unrelated claim"); 63 NY Jur. 2d Guaranty and Suretyship §342 (1987) ("A surety, when sued, cannot itself use the principal's counterclaim so long as the principal is solvent and thus able to respond to a claim for exoneration."). In other words, this rule means that when a principal is insolvent, a

surety, either through demand or judicial decree, may require the United States to setoff any

duties owed against excess cash deposits held by Customs prior to seeking payment from the

surety.

Second, a surety may compel a creditor to setoff the debts of an insolvent principal

against retained collateral when "the surety would be entitled to resort [to] reimbursement upon

satisfaction of the creditor's claim as the latter's subrogee." 63 NY Jur. 2d Guaranty and

Suretyship §342 (1987), *citing*, *Associated Food Stores, Inc. v. Siegel*, 205 NYS2d 208 (N.Y.

App. Div. 1960). Although this exception is derived from state law, federal courts have held that

in the absence of a "significant conflict" between state and federal law it is permissible to look to

state substantive law for guidance in determining the contours of federal common law. *See*

*United Pacific Insurance Co. v. United States*, 70 F. Supp. 2d 1089, 1098 (C.D. Cal. 1999),

*citing*, *United States v. Reliance*, 799 F.2d 1382, 1385 (9th Cir. 1986). The Court finds that this

state-based exception does not conflict with federal law but in fact, compliments Customs'

regulation regarding claims against the estate of an insolvent importer. Specifically, 19 C.F.R.

§141.1(c) provides:

> The claim of the Government for unpaid duties against the estate of a deceased or
> insolvent importer has priority over obligations to creditors other than the United States.
> To the extent that a broker or a surety pays duties on behalf of an importer which files for
> bankruptcy protection, the broker or surety shall be entitled to assume the priority status
> of Customs under section [507(a)(8)(F)][23] of the Bankruptcy Code.

---

[23] The regulation specifically refers to 507(a)(7), however, this section covers unsecured claims by matrimonial
creditors and creditors seeking to enforce child support orders. Section 507(a)(8)(F) specifically provides for
"customs duty arising out of the importation of merchandise--
> (i) entered for consumption within one year before the date of the filing of the petition;
> (ii) covered by an entry liquidated or reliquidated within one year before the date of the filing of the
> petition; or
> (iii) entered for consumption within four years before the date of the filing of the petition but unliquidated
> on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an
> investigation pending on such date into assessment of antidumping or countervailing duties or fraud, or if
> information needed for the proper appraisement or classification of such merchandise was not available to
> the appropriate customs officer before such date"

This regulation means that, upon payment of the demanded duties, Washington International would step into the United States' shoes as a creditor against General Bearing's estate and would assume the government's bankruptcy priority. Pursuant to 11 U.S.C. §507(a)(8)(F), the United States possesses priority over virtually all other unsecured claims, thereby entitling Washington International functionally to serve as the United States' subrogee in its claim for reimbursement and, thus benefit from this exception.

Although these two rules provide courts with the equitable authority to compel the United States to setoff a sureties' debt against the retained collateral of an insolvent principal prior to making demand on the surety, implicitly they create two conditions precedent that are not satisfied in the present case: (1) the surety must insist that setoff occur; and (2) the government must be in actual possession of the excess collateral. In order for the court to compel setoff, Customs must be *in possession of excess cash deposits* or some other form of collateral posted by the insolvent principal. If Customs lawfully disposes of this collateral prior to making demand upon the surety or before the surety insists that setoff occur, the Court is powerless to compel setoff under the common law. Once the money is returned to the principal, Customs may lawfully seek payment from the surety and, upon payment, the surety may act as the United States' subrogee in its claim against the principal's estate. *See* 19 C.F.R. §141.1(c). It is clear from the facts of the present case that Customs no longer possesses any of General Bearing's excess cash deposits that could be applied against setoff. Pursuant to the bankruptcy settlement order, Customs refunded 50% of the retained deposits no later than 10 days after the date the relevant entries were reliquidated. The relevant entries were reliquidated on June 29, 1993. It is undisputed that the first refund occurred ten days later, on July 9, 1993. The Group II entries were liquidated and demand for payment was made on Washington International on July 16,

1993. By law, the liquidation of the Group II entries became final and conclusive 90 days later, on October 14, 1993. Again, pursuant to the bankruptcy settlement order, the remaining 50% was refunded one hundred days after the first 50% was refunded – October 17, 1993. The timing of the events created a three-day window during which the surety could have demanded that Customs setoff its duty obligations against the retained cash deposits. Washington International's failure to do so allowed Customs to close that window and preclude any possibility of a court ordered setoff. It is imperative, therefore, for a surety to exercise diligence in situations where its principal is insolvent and to protect itself through a timely request for setoff. Additionally, because of the explicit prohibition of setoff imposed by the automatic stay it is imperative that a surety protects its interests by seeking to have the stay lifted, thereby allowing setoff.

The Court finds that the bankruptcy settlement agreement did not materially alter Washington International's contractual obligations, thereby negating the possibility of discharge. Similarly, the Court finds the conditions precedent for compulsory setoff to be absent and thus, cannot provide Washington International with equitable relief. Accordingly, the Court holds that Washington International is not discharged from its bond liability and remains obligated for the duties plus interest as required by law on entries: 419-01557482; 419-01569289; 419-01570352; 419-01597181; 419-01594873; 419-0159445-0; C15-00083352; C15-00097915; C15-00097956; C15-00097857; C15-00083550; C15-00083253; C15-00083477; C15-00083527; C15-00097899; C15-00083568; C15-00083600; C15-00083279; C15-00083220; C15-00083147; C15-00083261; C15-00083766; C15-00083139; C15-00083071; C15-00097824; C15-00097808; C15-00083725; 419-15913333; C15-00083329; C15-00083832.

## CONCLUSION

For the above stated reasons, the Court finds: (1) 28 U.S.C. §1581(a) jurisdiction exists over Count I of Washington International's complaint; (2) 28 U.S.C, §1581(i) jurisdiction does not exist over Count II and Count III of Washington International's complaint; (3) a genuine issue of material fact exists regarding whether the Group I entries are entitled to reliquidation at a company-specific rate; (4) the bankruptcy settlement agreement did not materially alter Washington International's contractual obligations on the bonds securing either the Group I or Group II entries and, therefore, Washington International remains liable for all unpaid duties plus interest as required by law on these entries; and (5) the conditions necessary to allow a court to compel equitable setoff were not satisfied.

Accordingly, the Court holds: (1) the United States motion to dismiss CIT No. 92-11-00720 for lack of jurisdiction is granted in part and denied in part; (2) the parties' cross-motions summary judgment in CIT No. 92-11-00720 are denied; (3) the United States' motion for summary judgment in CIT 96-11-02466 is granted and judgment is entered for the United States; (4) Washington International's cross-motion for summary judgment in CIT No. 96-11-02466 is denied.

Because the Court has ordered the issue of whether the Group I entries are entitled to reliquidation at a company-specific rate to be tried, ordinarily the judgment entered in favor of the United States on the Group II entries would be interlocutory and, therefore, not subject to appeal until the final resolution of this consolidated action. However, due to: (1) the completely unrelated nature of the issues relevant to the judgment on the Group II entries and to the remaining question of material fact; and (2) the uncertainty as to the duration of any future proceedings necessary to resolve the outstanding issue of material fact, the Court can find no just reason to delay entry of a final judgment. Accordingly, pursuant to USCIT R. 54(b) and as

reflected in the attached judgment order, the Court hereby directs a final judgment be entered in

favor on the United States on its complaint in CIT No. 96-10-02466.

_____
Gregory W. Carman,
Chief Judge

Dated: March 28, 2001
        New York, NY