Slip Op. 05-8

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**JAZZ PHOTO CORPORATION**,

Plaintiff,

v.

**UNITED STATES**,

Defendant.

</td><td>

Court No. 04-00629
Before: Judge Timothy C. Stanceu

</td></tr>
</table>

[Motion for *ex parte* temporary restraining order denied]

Decided: January 25, 2005

*Neville Peterson LLP* (*John M. Peterson, George W. Thompson, Curtis W. Knauss, Maria E. Celis* and *Catherine Chess Chen*) for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, *Stefan Shaibani*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Beth Brotman* and *Paul Pizzeck*, United States Customs and Border Protection, Department of Homeland Security, of counsel, for defendant.

## OPINION AND ORDER

**STANCEU, Judge:**

Plaintiff Jazz Photo Corporation ("Jazz") moves this court *ex parte*, pursuant to USCIT Rule 65(b), for a ten-day temporary restraining order enjoining United States Customs and Border Protection ("Customs") from "sampling, handling, removing, transporting, destroying or testing any of the merchandise" that plaintiff entered for consumption at Newark, New Jersey under Entry Nos. DT4-0029007-8, DT4-0029101-9 and DT4-0029005-2, on September 9, 2004. Pl.'s Application for a T.R.O. at 1; *see* Compl. ¶ 16. Because plaintiff has not made a showing

of immediate and irreparable injury sufficient to warrant an *ex parte* temporary restraining order, the motion must be denied.

## I. BACKGROUND

The merchandise at issue in this litigation consists of "lens-fitted film packages" ("LFFPs"), commonly referred to as "disposable cameras" or "one time use cameras," from the People's Republic of China.[1] *See* Compl. ¶¶ 26, 35. Customs excluded the subject LFFPs from entry into the United States, deeming them to be inadmissible under a general exclusion order that the U.S. International Trade Commission ("ITC") issued in 1999 under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 (2000) ("Section 337"). *See* Compl. ¶¶ 17, 18. In the ITC's investigation under Section 337, Fuji Photo Film Co., Ltd. ("Fuji"), claiming infringement of its various patents used in manufacturing LFFPs, had sought an order to exclude from entry into the United States the LFFPs of various importers, including Jazz, that are in the business of "refurbishing," with new film and other components, and re-importing LFFPs originally manufactured and sold by Fuji and its licensees. *See In the Matter of Certain Lens-Fitted Film Packages*, USITC Inv. No. 337-TA-406, Pub. No. 3219 (1999).

The current litigation arose from the denial of Jazz's administrative protest, filed October 5, 2004, in which Jazz contested the exclusion of the LFFPs from entry. *See* Compl. ¶ 19. This denial occurred by operation of law because the port director at Newark neither allowed nor denied Jazz's administrative protest "before the 30th day after the day on which the protest was filed." 19 U.S.C. § 1499(c)(5)(B). Plaintiff brought this action to contest the denial

---

[1] Background on previous importations of Jazz's LFFPs is provided in the opinion of this court in *Jazz Photo Corporation v. United States*, Slip Op. 04-146 (Ct. Intl. Trade Nov. 17, 2004), *appeal docketed*, No. 05-1096 (Fed. Cir. Nov. 19, 2004).

of the protest, invoking this court's jurisdiction under 28 U.S.C. § 1581(a) (2004). *See id.* ¶¶ 2, 21.

In its present motion, plaintiff maintains that a temporary injunction "will do nothing more than preserve the *status quo* with respect to the excluded merchandise at bar *pendente lite.*" Pl.'s Application for a T.R.O. at 2. Jazz argues that an order to this effect would permit the government to respond to, and the court to fully consider, Plaintiff's Application for a Preliminary Injunction Restraining Defendant from Sampling or Testing the Imported Merchandise Except by Order of Court ("Plaintiff's Application for a Preliminary Injunction") that was filed simultaneously with Jazz's motion for the temporary restraining order on January 3, 2005. *Id.* at 2. In Plaintiff's Application for a Preliminary Injunction, Jazz demands court supervision over the sampling and testing by Customs of the excluded merchandise, which plaintiff describes as currently located "in Customs bonded storage." Plaintiff's Application for a Preliminary Injunction at 6 n.3. Plaintiff refers to the reasoning set forth in its Application for a Preliminary Injunction to support its request for a temporary restraining order.

## II. Discussion

Rule 65(b) of this Court's rules sets forth the "immediate and irreparable injury" standard applying to motions for *ex parte* temporary restraining orders. The Rule provides as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) *it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition*, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required.

USCIT R. 65(b) (emphasis added).  In Plaintiff's Application for a Temporary Restraining Order, Jazz certifies that it served a copy of this motion on defendant's attorneys.  *See* Pl.'s Application for a T.R.O. at 1 n.1.  However, Jazz fails to show that immediate, irreparable injury will befall Jazz if its application for a temporary restraining order is not granted.  Such a showing is required in order for this court to grant "the extraordinary equitable relief that is a temporary restraining order."  *Warner-Lambert Co. v. United States*, 24 CIT 205, 208 (2000).

Jazz supplies the court with a variety of reasons to support its request for a temporary restraining order, including the unconvincing argument that Customs must attain leave of court before conducting any future sampling or testing of the imported merchandise that is the subject of this action.  *See* Pl.'s Application for a T.R.O. at 2; Pl.'s Application for a Preliminary Injunction at 4-5.  Jazz directs attention to the holding of this Court in *Washington International Insurance Co. v. United States*, 25 CIT 207, 218, 138 F. Supp. 2d 1314, 1326 (2001), quoting specifically the language in the opinion stating that "[j]urisdiction over Customs' actions is measured at the time the summons is filed.  Once entries are properly before the Court, Customs is powerless to exert authority over these entries in the absence of a Court order."  The holding in *Washington International Insurance Co.*, however, does not support plaintiff's contention.

In relevant part, *Washington International Insurance Co.* addressed the issue of whether Customs has the authority, absent a court order, to reliquidate entries after the jurisdiction of this Court under 28 U.S.C. § 1581(a) has attached to an action to contest the denial of an administrative protest challenging the original liquidations.  In that situation, this Court held the agency's action in reliquidation to be null and void, reasoning that reliquidation of the entries after the commencement of litigation essentially would divest the Court of jurisdiction to preside

over the action. *See Washington International Insurance Co.*, 25 CIT at 218, 138 F. Supp. 2d at 1326. The Court concluded that holding otherwise "could unilaterally hinder the judicial process and arbitrarily divest this Court of jurisdiction over legitimate legal claims." *Id.*

Jazz does not, and indeed could not, maintain that this court will be divested of jurisdiction to hear this matter if Customs conducts some sampling or testing of the merchandise that Customs excluded from entry. Nor does Jazz convince this court that some sampling or testing will prevent Jazz from proceeding with this litigation. This court finds nothing in the holding of *Washington International Insurance Co.*, or elsewhere, that would deprive defendant of the opportunity to sample or test the subject merchandise within the limits of the permissible process of discovery. To the contrary, defendant United States must be permitted to conduct proper discovery and prepare its defense in this action in accordance with this Court's rules. *See* USCIT R. 26(b)(1).

Jazz makes the further argument that any information that may be produced from post-exclusion sampling or testing amounts to "post-litigation 'evidence." *See* Pl.'s Application for a Preliminary Injunction at 7-8. Jazz demands that the court, at the very least, prevent Customs from sampling and/or testing the subject merchandise "until [the] plaintiff has had the opportunity to depose the Customs officials who made the protested decision to exclude" the subject merchandise. *Id.* at 7. Jazz posits that such a deposition is central to this litigation because it may reveal whether "Customs instructed its port officers to exclude plaintiff's goods on the basis of improper or illegal factors." *Id.* at 8. The court finds this argument unpersuasive. Plaintiff is challenging the denial of its protest of the determination to exclude its merchandise from entry, based on the ITC's general exclusion order. The court reviews the protest denial

*de novo*, as required by 28 U.S.C. § 2640(a)(1).  In this *de novo* proceeding, plaintiff bears the

burden of proving that the decision of Customs to exclude the merchandise was incorrect.  *See*

*Universal Elec. Inc. v. United States*, 112 F.3d 488, 491 (Fed. Cir. 1997) (citing 28 U.S.C.

§ 2639(a)(1)).  Even were plaintiff able to show that the decision to exclude the merchandise was

based on insufficient evidence or "improper factors," such a showing would not be central to this

litigation because it would be insufficient to satisfy the burden of proof required of plaintiff by

statute.

Jazz also contends that court supervision over any sampling or testing of the subject

merchandise is necessary in order to protect the integrity of Jazz's "Master Lot Number" system,

*i.e.*, the inventory control system under which the LFFPs were refurbished.  *See* Pl.'s Application

for a Preliminary Injunction at 6-7.  According to Jazz, the Master Lot Number system is an

internal tracking system developed to ensure, *inter alia*, that the used camera cases ("shells")

from which the imported disposable cameras were produced were subject to a patent-exhausting

first sale in the United States.[2]  *See id.* at 6-7.  "Accordingly, any separation of goods from their

constituent entries, or removal of goods from their packages, whether for testing or otherwise,

could impair plaintiff's ability to present its case-in-chief."  *Id.* at 7.

Jazz has not shown how the presentation of its case will be impaired by the defendant's

selection and handling of samples such that Jazz would suffer immediate or irreparable injury.

---

[2] The importance of proving where the shells that were used to refurbish the imported disposable cameras were first sold stems from the United States Court of Appeals for the Federal Circuit's holding in *Jazz Photo Corporation v. International Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001), *cert. denied*, 536 U.S. 950 (2002).  In *Jazz Photo Corporation*, the Court of Appeals for the Federal Circuit held that LFFPs that underwent a patent-exhausting first sale in the United States and that are refurbished by a process constituting "permissible repair" do not violate the intellectual property rights of the patent holder.

It is in the interest of each party to preserve identifying information during the selection and handling of samples, including preservation of all cartons and other packaging, so that the samples will have probative value. This identifying information would include, but would not necessarily be limited to, marks on packages that could identify plaintiff's Master Lot Numbers, which plaintiff relied upon in presenting its case in *Jazz Photo Corporation*, Slip Op. 04-146, a case involving "substantially identical [disposable] cameras." Pl.'s Application for a Preliminary Injunction at 2. Neither party reasonably could expect to gain an advantage in litigation from sampling that is conducted carelessly or in bad faith, and plaintiff has made no showing that defendant intends to conduct sampling in this way. Moreover, the court is not aware of anything that would prevent plaintiff from conducting its own sampling during the discovery process. The court expects that the parties will extend to each other the cooperation in discovery that is contemplated by the Rules of this Court.

Next, Jazz argues that the testing process will destroy the merchandise tested, thus inflicting Jazz with economic harm. Jazz asserts that:

> any testing of plaintiff's merchandise which attempts to determine whether the goods have been "permissibly repaired" or whether the goods underwent a first sale in the United States is necessarily destructive testing. Such testing involves, at a minimum, the removal of the goods from their outer packaging and the removal of inner packages and labels, rendering the goods unsalable. It may also involve opening the camera shells, breaking the light-tight boxes, and exposing the film, rendering the camera not only unsalable but also unusable.

Pl.'s Application for a Preliminary Injunction at 8. Jazz argues that any such "destructive testing" will impair its "property interest" in the subject LFFPs, pointing out that Jazz is free to export the excluded disposable cameras and sell such merchandise in other markets. *See id.* The

shortcoming of this argument is the lack of any showing that defendant, absent an *ex parte* temporary restraining order, will subject to destructive testing so great a quantity of the imported LFFPs as to cause plaintiff economic harm. Absent such a showing, this court will not presume that defendant intends to conduct sampling and testing, or other aspects of discovery, unreasonably, uncooperatively, or in bad faith.

The remaining arguments made in Jazz's applications for injunctive relief present evidentiary issues that do not address whether Jazz will suffer immediate, irreparable harm if a temporary retraining order is not issued. Such issues are not ripe for decision during this early stage of the litigation.

### III. CONCLUSION

The factual assertions and arguments advanced by plaintiff do not constitute a showing of immediate and irreparable injury. Therefore, it is hereby ORDERED that Plaintiff's Application for a Temporary Restraining Order is denied.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated:          January 25, 2005
                New York, New York